149 N.J. Super. 381 (1977)
373 A.2d 1028
STATE OF NEW JERSEY
v.
ROBERT SANCHEZ, DOLORES DUNN, EDWIN ARNDT, WILLIAM ARNDT A/K/A BILL, EUGENE ABALSAMO A/K/A GENE, DANIEL BOCCIA, WILLIAM O'CONNOR A/K/A BILLY, AND MILES GAUL A/K/A SONNY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 22, 1977.
*384 Mr. Frank M. Santora, Assistant Prosecutor for the State (Mr. Burrell Ives Humphreys, Prosecutor of Passaic County, attorney).
Mr. Arthur J. Abrams, for defendants Abalsamo, Boccia and Gaul (Messrs. Abrams & Wofsy, attorneys).
MARTIN, J.S.C.
Defendants Abalsamo and Boccia have filed a motion to suppress evidence obtained through wiretaps. The relevant facts are as follows:
On January 8, 1976, Assignment Judge Blake authorized the interception of wire communications of Robert Sanchez and other unidentified persons from telephone number 525-9402. On January 21, 1976 that order was amended by Judge Blake, enlarging the hours of daily surveillance for the balance of time established by the initial order.
On January 30, 1976 Judge Blake signed two additional orders authorizing wire interceptions on telephone numbers 525-9665 and 869-6963 for a 20-day period. In both instances the known targets of the electronic surveillance were *385 identified in the moving papers and the orders themselves as Robert Sanchez (Jerry, whose last name was unknown) and Bob Ennis.
On February 7, 1976 Judge Blake amended the order authorizing wire interceptions of telephone number 869-6963 by extending the hours of daily surveillance for the balance of time established by the initial order and enlarging the number of persons whose communications could be intercepted. With the exception of William Arndt, these additional "targets" were identified by first name only, or by code names monitored during prior interceptions.
All electronic surveillance having been terminated on or about February 20, 1976, Judge Blake, on April 21, 1976 and May 17, 1976, signed orders authorizing the service of inventories on Robert Sanchez, William Arndt and Dolores Dunn  the listed subscriber to telephone number 869-6963.
Defendants Abalsamo and Boccia were arrested on February 20, 1976 for conspiracy to violate the state lottery and bookmaking statutes. Both defendants were charged with conspiracy to violate N.J.S.A. 2A:112-3 and N.J.S.A. 2A:121-3, and with conducting a bookmaking operation in violation N.J.S.A. 2A:112-3. The identity of these two unnamed, but overheard, defendants never having been revealed to Judge Blake by the prosecutor's office, neither received inventories of their intercepted communications.
On November 4, 1976, at a pretrial conference, the State was ordered to furnish defendants with all documentary discovery by November 15, 1976, and to provide them an opportunity to listen to all intercepted wire communications no later than November 30, 1976. The State complied with the court order. Following compliance, defendants filed the present motion to suppress the evidence obtained by wiretaps.
At the outset it should be made clear that defendants' motion to suppress is not based on a due process claim of failure to provide adequate notice. United States v. Chun, 503 F.2d 533 (9 Cir.1974), states that:

*386 The unnamed but overheard are also entitled to Fourth Amendment protection. Specifically, we believe that when the government intends to use the contents of an interception or evidence derived therefrom, to obtain an indictment against an unnamed but overheard individual, such individual must be given notice promptly after the decision to obtain an indictment has been made. At a minimum this notice must include all the information which is contained in a § 2518(8)(d) inventory notice. In this context, the determination of what constitutes `promptly' should focus on whether the individual has been afforded a reasonable opportunity to prepare an adequate response to the evidence which has been derived from the interception. [at 537-538]
In footnote 8 on page 538 the court goes on to say that:
If the individual has been called as a witness before the Grand Jury, he would have a right at that point to attack the surveillance, see 18 U.S.C. § 3504(a), and notice would be required within a sufficient time prior to his appearance to allow an opportunity to prepare an adequate response. If, however, the individual has not been called as a witness before the Grand Jury, his first opportunity to attack the surveillance would be in preparation for trial. See In Re Grand Jury Subpoena of Fred Vigorito, 499 F.2d 1351 (2d Cir.1974). Thus notice, as outlined in the test, would not be necessary until a later point in time.
In the present case, defendants were not called as witnesses before the grand jury and, having been provided with full discovery more than three months prior to trial, the due process requirement of adequate notice has been amply complied with.
It should be made equally clear that defendants Abalsamo and Boccia were not "targets" in any of the wiretaps, their identity being unknown to the authorities until after the wiretaps were begun. In State v. Murphy, 137 N.J. Super. 404 (Law Div. 1975), rev'd on other grounds, 148 N.J. Super. 542 (App. Div. 1977), the court, citing U.S. v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), stated that affidavits and court orders were not required to particularize and identify each and every individual whose conversation is overheard. N.J.S.A. *387 2A:156A-9(c), the counterpart of 18 U.S.C.A. § 2518(1)(b)(iv), requires the name of a specific person in a wiretap application only when law enforcement officials believe that such an individual is actually committing the offense for which the wiretap is sought.
The authority to intercept is not limited to conversations between a party named in the order and others. Rather, assuming the substance of probable cause, the conversations of everyone using the telephone may be intercepted. [State v. Murphy, supra, 137 N.J. Super. at 414]
Defendants' counsel admitted in oral argument that the two defendants were not "targets" in the wiretaps and were identified only after the wiretaps were begun through photograph and fingerprint identification. Therefore, defense counsel's reliance on U.S. v. Bernstein, 509 F.2d 996 (4 Cir.1976), and State v. Murphy, supra, is misplaced.
In Bernstein the court concluded that since the authorities had probable cause to believe defendant was committing a specific crime and would probably be overheard during the course of the wiretap, the failure of the government to name defendant in its affidavit violated 18 U.S.C.A. § 2518(1)(b)(iv), which requires that an application for a wiretap include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." The holding in Bernstein was based on a violation of the identification requirement of 18 U.S.C.A. § 2518(1)(b)(iv) and not on a violation of the inventory notification requirement of 18 U.S.C.A. § 2518(8)(d).
In State v. Murphy, supra, the court, citing U.S. v. Bernstein, supra, at 1001, stated that
All authorized interceptions must eventually become known at least to the named subject ... If a known person is not listed in the affidavit or order authorizing such wiretap, the unnamed subject has no assurance he will receive notice and may lose the benefit of the statutory requirement altogether. [N.J.S.A. 2A:156A-16 requiring service of inventory on `the person named in the order or application, and such other parties to be intercepted *388 communications as the judge may in his discretion, determine to be in the interest of justice']. Such was the case here. Murphy, as well as the other defendant, although clearly implicated in criminal activities and truly the focus of the continuing investigations, but who remained unnamed in every subsequent extension order, never received formal notification and service of inventory. To prevent this very type of insolence in the enforcement of the tightly drawn wiretapping act the drafters wanted the name of the focus of the investigation to be memorialized." [137 N.J. Super at 427; emphasis supplied]
It is apparent that the wiretap communications were suppressed primarily because of a failure to comply with the identification requirement of N.J.S.A. 2A:156A-12(b), which thereby denied to defendants the benefit of the notice requirement of N.J.S.A. 2A:156A-16, a situation which does not exist in the present case.
In State v. Cirillo, 146 N.J. Super. 577 (Law Div. 1977), the court accepted this interpretation of Murphy when it stated:
The suppression order entered in State v. Murphy may be explained, in part, by the failure to name Murphy, the target of the wiretap, in the order and all extension orders and the failure to serve him with formal notice and an inventory as required by N.J.S.A. 2A:156A-16.
Since Abalsamo and Boccia were not "known" to the authorities prior to commencement of the wiretap, they could not be named in the authorization application. The holding in Murphy is not dispositive of this motion.[1]
Defendants' motion to suppress is then based on the failure of the prosecutor's office to provide the names of the unnamed, but overheard, defendants to the judge who issued the wiretap orders, thereby denying the issuing judge *389 an opportunity to exercise his discretionary power to require inventories to be served on these unnamed, but overheard, defendants pursuant to N.J.S.A. 2A:156A-16. Defense counsel contends that failure to conform with the requirements of N.J.S.A. 2A:156A-16 constitutes a "communication * * * unlawfully intercepted," justifying suppression pursuant to N.J.S.A. 2A:156A-21(a).
Due to the extensive judicial treatment afforded 18 U.S.C.A. § 2518(8)(d), which is the counterpart of N.J.S.A. 2A:156A-16, a survey of these decisions will facilitate the disposition of the present motion.
In U.S. v. Tortorello, 480 F.2d 764 (1973), the Second Circuit Court of Appeals concluded that 18 U.S.C.A. § 2518(8)(d) mandates that the issuing judge order an inventory within 90 days only to those persons identified and named in the order. As to the parties overheard but not named, the issuing of an inventory is discretionary with the issuing judge. U.S. v. Chun, supra. This procedure for discretionary notice to unnamed, but overheard, persons has been declared constitutional, not offending the Fourth Amendment. U.S. v. Cafero, 473 F.2d 489 (3 Cir.1973). In U.S. v. Ramsey, 503 F.2d 524 (1974), the Seventh Circuit Court of Appeals reached the same conclusion: that the statute, in failing to require that notice be given to every person whose conversation had been overheard, does not confer impermissible authority to conduct secret searches. The court said (at 531, n. 24): "The mere fact that the statute does not require notice to be given to everyone whose conversations have been overheard does not render it unconstitutional." To the same effect see U.S. v. Whitaker, 474 F.2d 1246 (3rd Cir.1973).
In order to satisfy the statutory provision of 18 U.S.C.A. § 2518(8)(d) for discretionary service of inventory notice to persons other than those named in the application, the issuing judge must have, at a minimum, knowledge of the particular categories into which fall all the individuals whose conversations have been intercepted. Although the issuing *390 judge has the duty to cause the filing of the inventory, only the prosecutor has access to the information necessary for making discretionary determinations to serve inventories. In light of this situation, the court in U.S. v. Chun, supra, felt justified in imposing on the prosecutor's office the duty to classify all those whose conversations were intercepted and to transmit this information to the issuing judge.
The question now becomes whether the failure of the prosecutor's office to provide this information to the issuing judge, thereby precluding any determination by the judge to serve inventories, constitutes a sufficient breach of the statutory requirement of N.J.S.A. 2A:156A-16 to justify suppression as an "unlawfully intercepted communication," pursuant to N.J.S.A. 2A:156A-21(a).
In U.S. v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the court stated that
We think Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the Congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary device. [at 527, 94 S.Ct. at 1832]
In U.S. v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed. 2d 380 (1974), the court stated that
We did not go so far as to suggest that every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications `unlawful' ... suppression is not mandated for every violation of Title III. [at 574-575, 94 S.Ct. at 1856]
In deciding whether a statutory violation mandates suppression of the intercepted communications, it must be determined whether the particular procedure is a central or functional safeguard in Title III's scheme to prevent abuses. If this test has been met, it must also be determined whether the purpose which the particular procedure was designed to *391 accomplish has been satisfied in spite of the error. U.S. v. Giordano, U.S. v. Chavez and U.S. v. Chum, supra. U.S. v. Chavez, supra, implicitly suggested a third factor which may have a bearing on the issue: whether the statutory requirement was deliberately ignored; and, if so, whether there was any tactical advantage to be gained thereby. However, in U.S. v. Donovan, 513 F.2d 337 (6 Cir.1975), the court concluded that once it is determined the provision plays a "central role," suppression must follow when it is shown that this statutory requirement has been ignored, regardless of whether the failure to comply was inadvertent or purposeful or whether any tactical advantage or prejudice was caused thereby. It should be noted that the prosecutor's office initiated discussions with this court and defense counsel in October 1976 to facilitate the development of discovery procedures for the wiretap tapes. As a result, no claim of prejudice or bad faith has been raised by defense counsel. Therefore, it is unnecessary for this court to speak to these issues.
It has been determined that the inventory notice provision of 18 U.S.C.A. § 2518(8)(d) plays a central role as a functional safeguard in the statutory scheme. Therefore, a violation may require suppression, depending on a determination as to the other factors affecting suppression set out in Giordano and Chavez discussed above. U.S. v. Chun, supra.
In U.S. v. Donovan, supra, the facts were nearly identical with the present case. Two defendants, who were not "known" to the government prior to the wiretap and, therefore, were not named in the application for wiretap authority, were overheard during the course of the wiretap and later were indicted. The government never transmitted their names to the issuing judge in order to permit him to exercise his discretion to issue inventory notices. Neither defendant received notice of their intercepted communications until they filed motions for discovery after their indictment, more than one year after the actual interception. The appellate court determined that the inventory notice provisions have a central role in limiting the use of intercept procedures; *392 that the government breached its duty to identify the two defendants to the issuing judge; that there was a total failure to comply with the notice requirement, and that the questions of bad faith and prejudice are immaterial. Therefore, the court granted the motion to suppress the wiretaps.
In U.S. v. Civella, 533 F.2d 1395 (8 Cir.1976), which is cited by defense counsel, only one defendant was named in the application, although the government had probable cause to believe that the conversations of several other defendants were likely to be intercepted. The court, in denying the motion to suppress of these known, but unnamed, defendants, concluded that, while the strict identification requirements of 18 U.S.C.A. § 2518(1)(b)(iv) were not met, since defendants were promptly notified, in substantial compliance with 18 U.S.C.A. § 2518(8)(d), concerning the facts and circumstances surrounding the interception of their communications, thereby enabling them to apply to the issuing judge for an order making available to them the contents of the intercepted communications, the purposes of 18 U.S.C.A. § 2518(1)(b)(iv) were achieved and there was sufficient substantial compliance with that subsection.
Concerning the remaining two defendants, the court in Civella determined that it was unnecessary to decide whether the government had probable cause to believe that these defendants were committing the offenses under investigation and would likely be in communication with the other known parties. These decidedly unknown defendants were never served with inventories and received no notice of the interceptions until an indictment was returned against them nearly two years after the authorized wiretap had terminated. The court, relying on the decisions in Donovan and Chun, concluded that the government's failure to substantially comply with the inventory requirement of 18 U.S.C.A. § 2518(8)(d) was, by itself, sufficient grounds for granting the motion to suppress, and, therefore, it was *393 unnecessary to determine whether the government had also failed to comply with the identification requirements of 18 U.S.C.A. § 2518(1)(b)(iv).
These three cases, Chun, Donovan and Civella, appear to be dispositive of the present motion to suppress. However, the Supreme Court has implicitly overruled the decisions in both Chun and Civella when it reversed the decision of the Court of Appeals in Donovan, stating that "the Government did not comply adequately with 18 U.S.C.A. § 2518(8)(d), since the names of [defendants] were not included on the purportedly complete list of identifiable persons submitted to the issuing judge." However,
* * * nothing in the structure of the act or this legislative history suggests that incriminating conversations are "unlawfully intercepted" whenever parties to those conversations do not receive discretionary inventory notice as a result of the government's failure to inform the District Court of their identities. * * * The legislative history indicates that postintercept notice was designed instead to assure the community that the wiretap technique is reasonably employed. But even recognizing that Congress placed considerable emphasis on that aspect of the overall statutory scheme, we do not think that postintercept notice was intended to serve as in independent restraint on resort to the wiretap procedure. [U.S. v. Donovan, ___ U.S. ___ at page ___-___ and ___-___, 97 S.Ct. 658 at page 669-670 and 673-674, 50 L.Ed.2d 652 (1977)]
Defense counsel, after being informed of the Donovan reversal, argues that the State of New Jersey has the authority to impose higher standards for wiretapping under our State Constitution then those required by the Federal Constitution, and to support this proposition cites State v. Johnson, 68 N.J. 349 (1975), which states (at 353): "However, each state has the power to impose higher standards on search and seizures under state law than is required by the Federal Constitution. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)." The court in Johnson, noting that N.J. Const. (1947), Art. I, par. 7, is taken almost verbatim from the Fourth Amendment, did not conclude, as a general proposition, that *394 our State Constitution requires a higher standard in all cases of search and seizure. Rather, Johnson deals only with the very narrow issue of consent search, which is an exception to the general requirement of a search warrant based on probable cause. The court determined that where these normal safeguards are dispensed with, our State Constitution requires, for a search to be considered reasonable, and therefore lawful, an additional safeguard  "knowledge of the right to refuse consent." State v. Johnson, supra at 354. The court cautioned that "except for the instant case, this decision is to have prospective effect applying only to searches based on consents which take place after the date of this opinion." Id. Johnson did not intend to extend its interpretation of the State Constitution requiring stricter standards into any area of the law of search and seizure other than consent searches. Considering the nearly identical language concerning probable cause and search warrants in the Federal and New Jersey Constitutions, this court concludes that our Constitution does not require higher standards where searches are conducted pursuant to search warrants or court orders based on probable cause.
It still must be determined whether the New Jersey Legislature, through the enactment of N.J.S.A. 2A:156A-1 et seq. and the amendments thereto, has evidenced its intent to create stricter safeguards for wiretaps than those provided in the federal wiretap statute, 18 U.S.C.A. § 2510 et seq. In evaluating legislative history this court does not find persuasive, as evidence of the Legislature's intent, testimony at public hearings of parties representing various special interest groups. Rather, this court looks to committee reports and sponsor's statements as the proper guide in determining the intent of the Legislature.
The New Jersey wiretap statute is closely modeled after the federal statute. In the report of the Joint Legislative Committee to Study Crime and the Systems of Criminal Justice in New Jersey, April 22, 1968, the committee stated (at 12) that
*395 At present, Section 605 of the Federal Communications Act presents obstacles to a state developing an independent electronic eavesdropping policy. That section is now under active consideration by the Congress for amendment under a bill which would establish national standards by which states could authorize electronic eavesdropping. Final drafting of any New Jersey Bill, therefore, must await passage by the Congress of those standards; of course, any subsequent bill would have to conform in all necessary respects. [Emphasis supplied]
The report on Senate Bill 897, Electronic Surveillance (Senate Committee on Law, Public Safety and Defense, October 29, 1968, states on page 5, that:
The Senate Committee on Law, Public Safety and Defense believes enactment of electronic surveillance legislation is important to the public interest and recommends to the Senate immediate passage of a revision of S897 to meet the Federal standards and safeguards incorporated in Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and features developed from testimony presented to the Committee at its public hearings.
The sponsor's statement, cited at pages 20 and 21 of the report, stated that:
A redraft of Senate Bill No. 897 was dictated by enactment by the Congress on June 19, 1968, of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (C.P.L. 90-351) which contains precise limitations on content of any state statute on wiretapping and electronic surveillance some of which were injected into the federal legislation after Senate Bill No. 897 had been prepared. This bill is designed to meet the federal requirements and to conform to the Federal Act in terminology, style and format which will have obvious advantages in its future application and construction.
As defense counsel has correctly pointed out, the 1974 amendments do, in several instances, create additional requirements which are not found in the federal statute. For example, N.J.S.A. 2A:156A-4 requires that if a person, other than a law enforcement officer, consents to the interception by such an officer of a communication to which he is a party, the Attorney General or the county prosecutor *396 must first determine that there is a reasonable suspicion that evidence of criminal conduct will be derived from the interception. N.J.S.A. 2A:156A-7 requires that an application for a wiretap order contain a showing that there is probable cause to believe such communication will be communicated on the wire communication facility involved or at the particular place where the oral communication is to be intercepted. N.J.S.A. 2A:156A-10 requires that where there is no corroborative evidence, the issuing judge must inquire into the identity of the informant or any other additional information, concerning the basis upon which the order is requested, which the judge finds relevant in determining the existence of probable cause. N.J.S.A. 2A:156A-11 creates a broad scope of people against whom "special need" must be shown before a wiretap order will be issued. N.J.S.A. 2A:156A-12 reduces the time period for wiretaps from 30 days, as allowed by the federal statute, to 20 days and allows extensions for only two additional ten-day periods. In addition, this section requires that interceptions be conducted so as to minimize or eliminate interception of communications not subject to interception by making reasonable effort, wherever possible, to reduce the hours of interception authorized by said order. The federal counterpart, 18 U.S.C.A. § 2518(5), only requires that such interceptions be minimized. Finally, N.J.S.A. 2A:156A-12 adds an additional basis for suppression of the wiretap as "unlawfully intercepted" and requires that if a motion to suppress is granted, the entire contents of all intercepted wire or oral communications obtained during or after any interception which is determined to be in violation of this act or evidence derived therefrom is to be suppressed.
Although these amendments constitute a significant number of specific additional requirements beyond those embodied in the federal wiretap statute, this court finds that they do not negate the stated intent of the Legislature to generally pattern the New Jersey statute on the *397 federal standards and safeguards incorporated in 18 U.S.C.A. § 2518(1) et seq. The report on the New Jersey Wiretapping and Electronic Surveillance Control Act, September 16, 1974, by Attorney General William F. Hyland, which contained a number of recommendations that were incorporated into the 1974 amendments, stated that the New Jersey statute is designed to meet the minimum requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, but only in several specific respects, however, should the provisions of the act be tightened. The statutory language of N.J.S.A. 2A:156A-16, service of inventory by judge, being taken almost verbatim from its federal counterpart, 18 U.S.C.A. § 2518(8)(d), is an additional indication of our Legislature's intent to adopt the federal requirements  and nothing more  in this specific area of post inventory notice.
Finally, this court has found no indication in the legislative history of an intent that the requirements and safeguards of N.J.S.A. 2A:156A-1 et seq. be applied more stringently than its federal counterpart; that any failure to comply fully with all the requirements provided in N.J.S.A. 2A:156A-1 et seq. would render the interception "unlawful" under N.J.S.A. 2A:156A-21. Additionally, the appellate court in State v. Murphy, supra, interpreted N.J.S.A. 2A:156A-21 as not authorizing suppression for failure to comply with post-interception provisions  primarily, N.J.S.A. 2A:156A-16, post-interception service of inventory. Suppression, the court noted, may be an appropriate judicial remedy only when it is necessary to prevent the occurrence of intentional or insolent violations of this statutory requirement  a situation which, as previously discussed, does not exist in the present case.
Therefore, in light of this legislative history, the Supreme Court's decision that the federal post-intercept notice requirement does not play a central role as a functional safeguard in the federal statutory scheme, and that failure to fully comply with this provision does not render unlawful *398 an interception that in all other respects satisfied the statutory requirements, should be applied to the New Jersey wiretap statute. The motion of defendants Abalsamo and Boccia to suppress the wiretap communications is denied.
Concerning the third defendant, Miles Gaul, his defense counsel filed a letter requesting to join in the motion of Abalsamo and Boccia only a few days prior to the date of hearing, pursuant to N.J.S.A. 2A:156A-21, which states that "the motion shall be made at least 10 days before the trial, hearing or proceeding unless there was no opportunity to make the motion or the moving party was not aware of the grounds for the motion." However, under R. 3:5-7 a motion to suppress evidence "shall be made 30 days after the initial plea to the charge unless, the court, for good cause shown, enlarges the time."
In Winberry v. Salisbury, 5 N.J. 240 (1950), the court stated that the rule-making power of the Supreme Court is not subject to overriding legislation when confined to practice, procedure and administration as such; therefore, a rule promulgated by the Supreme Court, which requires an appeal from a final judgment of the trial division of the Superior Court within 45 days, prevails over a statute permitting an appeal within one year after judgment is rendered.
Since defendant Gaul admittedly stands in the same position as defendants Abalsamo and Boccia, and the court has denied the motion of these two defendants, it is not necessary to speak to this conflict between the Legislature and the judiciary concerning the time limit for filing a motion to suppress evidence obtained through wiretaps.
NOTES
[1] The Appellate Court in Murphy determined that omission of defendant's name from the intercept orders was the grounds for the trial court's suppression order. The reversal was based on the court's determination that this omission did not warrant the extreme remedy of suppression under the specific facts of this case.