208 N.J. Super. 628 (1986)
506 A.2d 797
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL TIRELLI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 1986.
Decided March 17, 1986.
*630 Before Judges FURMAN, PETRELLA and ASHBEY.
*631 Thomas S. Smith, Acting Public Defender, attorney for appellant (Jon Steiger, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Carol M. Henderson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by PETRELLA, J.A.D.
This is an appeal by defendant Michael Tirelli from his conviction by a jury of the offenses of misconduct in office and unlawful interception of an oral communication. Defendant raises the following issues on appeal:
1) Both the charge to the jury and the limitations placed upon defense counsel with respect to the offense of misconduct in office were reversible error in that they prevented the jury from considering an essential element of that offense.
2) The court failed to properly charge the jury with respect to an essential element of the crime of unlawfully intercepting an oral communication.
3) The defendant is entitled to an acquittal with respect to count two as a matter of law since his conduct was clearly outside that which is proscribed by N.J.S.A. 2A:156A-3(a) (unlawful interception of an oral communication).
4) The admission of certain parts of Alfred Luciani's testimony was plain error.
This appeal constitutes another chapter in the investigation of Dr. Harry Sugar for the murder of his wife, Joan Sugar. See State v. Sugar, 84 N.J. 1 (1980) and State v. Sugar, 100 N.J. 214 (1985). On July 11, 1979 Dr. Sugar reported his wife missing to the Vineland Police Department. Defendant, who was chief of detectives, assigned the investigation to Detective John Mazzeo. On July 31, 1979 defendant and Mazzeo, along with other members of the Vineland police force, conducted a consensual search of the Sugar residence. On August 6, 1979 defendant and Mazzeo returned to the Sugar residence with the aid of a psychic, defendant's cousin. They moved a picnic table away from the ground on which it was sitting, and defendant told Mazzeo to get a shovel from the car and to start digging. Mazzeo dug into the soil and noticed some flies going into the hole which he had been digging. Mazzeo also smelled a foul *632 odor coming from the ground. After he dug a few more feet he discovered what turned out to be a human leg.
Sugar, who was returning from California that evening, was arrested at his home in Vineland by defendant and Detectives Mazzeo, Walters and Adams and Chief Joseph Soracco of the Cumberland County Prosecutor's Office and advised of his rights. At the station Sugar was interrogated by defendant, Walters and Mazzeo. Defendant testified that Dr. Sugar was cool and sat very calmly, and that this upset defendant who started hollering at Sugar. At this point Soracco and Adams took over the questioning. Approximately 1/2 hour later defendant came back in to interrogate Sugar.
Sugar contacted the law firm of Greenblatt & Greenblatt. Some time after 2 a.m. Rocco Tedesco, an associate with the firm, was telephoned and asked to go to the Vineland Police Station to see Sugar. Tedesco told defendant that he wished to meet with Sugar privately and defendant asked one of the other officers to take Tedesco to an interrogation or conference room. In that room was a concealed microphone which was part of an electronic communications system hooked up so that defendant, in his office, could hear the conversation taking place there. Defendant testified that at this time he and Soracco listened to Tedesco and Sugar converse. According to defendant's testimony, Soracco had turned on the machine. Soracco, however, claimed that he was not in defendant's office and did not hear any of that conversation. Defendant had a tape recorder on the side of his desk and turned it on to record the conversation. Tedesco testified that his meeting with Sugar lasted for only a couple of minutes. After that meeting he went into the squad room and had a cup of coffee with a number of the detectives who were present. He informed defendant that Sugar would not give a statement and then left the police station, as did defendant.
Tedesco returned to the police station at about eight o'clock the next morning because he had been informed by defendant *633 that the police wished to take Sugar on a search of his home. Tedesco wanted to be present and to find out whether his client had been charged with any crimes because Sugar was being held in custody. Jay Greenblatt, a lawyer from the firm with which Tedesco was associated, arrived at about 9 a.m. The lawyers asked defendant if they could meet in private with Sugar. Tedesco, Greenblatt and Sugar met in the same room in which Tedesco and Sugar had met in the early morning hours of that same day. At this time, defendant was in his office with Soracco, discussing whether they believed that Sugar committed the murder. Defendant testified that Soracco reached over and turned on the button on the console. Soracco testified that he walked in after defendant had turned on the console in order to listen to Sugar and his attorneys. Mazzeo entered defendant's office to ask what charges should be filed against Sugar and defendant asked Mazzeo to get a pad and take notes on what was being overheard. At that time defendant was recording the conversation. After the conversation had ended, defendant "opened the door, I had said  I had blurted out, I guess from the excitement or something, I just says `he confessed. Then shot her up with drugs and buried her.'"
On August 7, 1979 the police conducted a search of the Sugar residence and Tedesco accompanied the police on that search. Tedesco later told Greenblatt that the police were unbelievable because "they got everything." After Soracco left the Vineland Police Station he told William Doherty, Cumberland County Prosecutor, about the interception of the conversation between Sugar and his attorneys. Soracco was asked to question defendant to see whether the preparation and execution of the search warrant involved any taint. Defendant told Soracco that he should not worry about any taint problems with the interception because he had everything covered. Defendant also stated "this is a police practice."
On August 14, 1979 Soracco met with two members of the Attorney General's office. On August 15 he met with other *634 members of the Attorney General's office and the State Police. By this time the assignment judge and the Division of Criminal Justice had been informed of the intercept. Soracco was requested by a Deputy Attorney General to wear a body microphone and to engage in conversation with defendant. Soracco went to defendant's office and questioned him about the items seized during the search and whether they were seized because of information overheard between Sugar and his attorneys. The conversation between Soracco and defendant ended when a member of the State Police and a Deputy Attorney General from the Division of Criminal Justice entered defendant's office. Defendant was told that they were there to investigate allegations that members of the Vineland Police Department were engaged in an illegal intercept of a privileged conversation between a lawyer and a client. At this point defendant stated that he did not know anything about the intercept.
Defendant was convicted by the jury of misconduct in office contrary to N.J.S.A. 2A:85-1 and of illegally intercepting an oral communication contrary to N.J.S.A. 2A:156A-3(a).[1] He was sentenced to a term of probation for five years, a $2,500 fine and restitution of $26,800 by (1) performing eight hours of community service each week (with a credit of $100 for each eight hours) to aid the County Probation Department to coordinate community service projects and supervise other probationers performing community services; and (2) lecturing students on narcotics (with a credit of $80 for each of 10 lectures). Pursuant to N.J.S.A. 2C:51-2, defendant also forfeited his position as a Vineland police officer.
We first consider defendant's challenge to the judge's instructions to the jury. N.J.S.A. 2A:85-1 (now repealed) had been construed to include common law misconduct in office. State v. Furey, 128 N.J. Super. 12, 17 (App.Div. 1974), certif. *635 den. 65 N.J. 578 (1974). All common law offenses were abolished by the Code. N.J.S.A. 2C:1-5. Under the Code "official misconduct" is now defined as involving a "purpose to obtain a benefit for himself or another or to injure or deprive another of a benefit." N.J.S.A. 2C:30-2. During his initial charge to the jury, the judge stated:
From the contents of the charge I've just given you, it should be clear that the act of interception of an oral communication by use of a mechanical device is illegal under our New Jersey Wiretap statute. When it is allegedly done and it's proven beyond a reasonable doubt to have been done by a police officer, then it constitutes a separate crime of misconduct in office by the police officer.
After deliberating for some time the jury requested a clarification of the applicable law of misconduct in office. The judge gave a supplemental charge:
In order for you to find the defendant guilty of misconduct in office, you must find beyond a reasonable doubt that the defendant, Michael Tirelli, was, one  a public official, in this case a police officer, in the employ of the City of Vineland Police Department; two  that he was acting in the exercise of the duties of his office as a police officer on August 7, 1979 when the alleged interceptions took place down until August 15, 1979 when the search of the Sugar residence took place; three  that he did willfully and unlawfully perform an act which is unlawful in and of itself. That is, an act of malfeasance in office; or, as it applies in this case, that he did willfully and unlawfully perform an act which is in violation of the New Jersey Wiretap statute.
The judge continued:
if you find the defendant not guilty of count two, three and four, you must automatically find him not guilty of count one. Because he cannot possibly be guilty of count one if he didn't do an unlawful act. And the only unlawful acts are violations of the New Jersey wiretap statute. So, should you look at the indictment in reverse and you find him not guilty of counts two, three, and four, he must be found not guilty of count one. If you find him guilty of count one, misconduct in office, you must find him guilty of one other count of the indictment: Count two or count three or count four. Because if the State proves beyond a reasonable doubt to your satisfaction that he committed an unlawful act under count one, there has to be a corresponding unlawful act under two, three, or four that he had to have committed. He may not. If you find him guilty of count one, he may be guilty of count two and not guilty of three and four. He could be guilty of count one, not guilty of two, guilty of three and not guilty of four or any combination. But there has to be two guilty findings: One, and something else. And again I repeat: If you find him not guilty of two, three and four, you must find him guilty  must find him not guilty of count one.

*636 All right, that should clarify it for you.
In State v. Schultz, 71 N.J. 590 (1976) the court stated:
While this Court has approved the classic definition of misconduct in office as `corrupt misbehavior by an officer in the exercise of the duties of his office or while acting under color of his office,' State v. Begyn, 34 N.J. 35, 49 (1961), we have made it clear that the word `corrupt' does not necessarily, in this sense, mean financial dishonesty. It rather connotes that the wrongful act was done `willfully' and `unlawfully.' Id. at 50. The essence of the crime is that the impugned conduct is done with `evil motive or in bad faith and not honestly.' Id. at 50. In accord: State v. Williamson, 54 N.J. Super. 170, 183-185 (App.Div.) aff'd o.b. 31 N.J. 16 (1959); and see State v. Savoie, 67 N.J. 439, 461-462 n. 7 (1975). It would be preferable if indictments and jury charges in this area used the latter language rather than the misleading `corrupt' or `corruptly.' [Id. at 601-602.]
Defendant tried, unsuccessfully, to present a defense of good faith. He asked the trial judge to instruct the jury on his good faith in intercepting the conversation between Sugar and his lawyers. The judge refused to so charge the jury, and defendant registered his objection at the conclusion of the charge. We are of the opinion that there was no requirement here to charge good faith.
In State v. Williamson, 54 N.J. Super. 170 (App.Div. 1959), aff'd o.b. 31 N.J. 16 (1959) we said:
The indictment under scrutiny here is not defective for failure to charge corruption. The defendant's conduct is described therein as having been done `unlawfully and willfully,' which imports bad faith. State v. Winne, supra, (12 N.J. [152] at page 175). This is sufficient [Id. at 195.]
The only allegation of misconduct in office was defendant's violation of N.J.S.A. 2A:156A-3 which also uses the language "willfully." Clearly defendant interfered with the attorney-client privilege, see Evid.R. 26; N.J.S.A. 2A:84A-20, and had no right to intercept the privileged communication. See State v. Sugar, supra (100 N.J. at 229) and (84 N.J. at 13-14). To negate the unlawfulness of defendant's actions he would have to establish that he did not act willfully, and thus did not violate N.J.S.A. 2A:156A-3. Thus, there was no need to charge bad faith because the combination of willfully and unlawfully import bad faith. As such, we find that the court below did not *637 err by not charging good faith and by disallowing defendant's proffer of good faith evidence.
Defendant was also convicted of violating N.J.S.A. 2A:156A-3a which stipulates:
Except as otherwise specifically provided in this act, any person who:
a. Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication; ...
* * * * * * * *
shall be guilty of a misdemeanor....
N.J.S.A. 2A:156A-2b defines oral communication as: "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." The court used this very language in charging the jury. Defendant, however, claims that there was error because there was no testimony as to Sugar's expectations regarding privacy during his conversations with his attorneys. Tedesco, one of Sugar's attorneys, did testify that he expected their conversation to be private. We are satisfied that this fulfilled the statutory requirement that "a person" exhibit an expectation that such communication not be subject to interception.
Defendant also argues that Sugar's constitutional rights once in jail "are substantially diminished." However, N.J.S.A. 2A:156A-2b does not speak in terms of a prisoner's constitutional rights, but rather a person's expectations. In support of his position defendant cites Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); State v. Ryan, 145 N.J. Super. 330 (Law Div. 1976) and Koerner v. N.J. Correc. & Marr. Lic., Hackensack, 163 N.J. Super. 433 (Law Div. 1978). Aside from the fact that Sugar, at the time of the intercepted communications with his lawyers had not been charged with a crime, and was apparently being held as a suspect or material witness, the cited cases discuss the constitutional rights of prisoners and the resulting diminished expectation of privacy in prison. They do not discuss the privacy expectations in the applicable statutes. *638 Hence they are inapposite. We thus find no merit to defendant's contention.
Defendant also claims that his conduct was clearly outside what is proscribed by N.J.S.A. 2A:156A-3a, and that Sugar enjoyed no protection under that statute. As we read that statute, as well as N.J.S.A. 2A:156A-2b, there is no exception for a defendant's or prisoner's expectation of privacy. The statute speaks of a person's expectation of privacy. As noted, attorney Tedesco clearly testified to such an expectation. As such, the jury's conviction of defendant for violating N.J.S.A. 2A:156A-3a cannot be disturbed on that ground. We find no error below.
Finally, defendant contends that the testimony of Alfred Luciani, former Deputy Director of the Division of Criminal Justice, was plain error. Luciani testified as to the consensual electronic intercept of defendant by Soracco; about the lawyer-client privilege in New Jersey; and that the use of the electronic surveillance supported charges of misconduct in office or obstruction of justice. Defendant did not object to Luciani's testimony at trial, and defendant's counsel thoroughly cross-examined Luciani. Defendant now claims that it was plain error for Luciani to testify as to the law. R. 2:10-2; R. 1:7-2. Defendant argues that Luciani's testimony went to an issue to be decided by the judge and not "by the trier of the fact," Evid.R. 56(3), and that Luciani was never qualified as an expert. Out of the hearing of the jury, Judge Kleiner stated at the end of defendant's cross-examination of Luciani:
This gentleman is very bright. He forgets that he has  he's talking to fourteen laymen that haven't understood one word he said all day, nor did he understand you or his questions. The whole thing is beyond them. So at the end of the case, I'm going to tell them and give them a lecture in plain, common language that they are not failing to understand.
Our reading of the record confirms the trial court's statement that counsels' questions and Luciani's testimony were not easily understandable by a jury. In any event, the judge instructed the jury that they should take the law solely *639 from him. He instructed the jury properly with respect to the law on these issues. Hence, any error in allowing Luciani to testify on legal issues did not prejudice defendant and was not capable of producing an unjust result. R. 2:10-2; State v. Macon, 57 N.J. 325, 337-338 (1971).
Affirmed.
NOTES
[1] The offenses occurred prior to the September 1, 1979 effective date of the Penal Code. See N.J.S.A. 2C:1-1b. However, defendant was sentenced under the provisions of the Code. See N.J.S.A. 2C:1-1c(2).