706 A.2d 264

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. SIOBHAN DIAZ, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 13, 1998—Decided February 27, 1998.

Before Judges STERN, KLEINER and KIMMELMAN.

*Gerard E. Hanlon,* argued the cause for appellant (*Mr. Hanlon,* on the brief).

*Joseph Connor, Jr.,* Assistant Morris County Prosecutor, argued the cause for respondent (*John B. Dangler,* Morris County Prosecutor, attorney; *Mr. Connor, Jr.,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

We granted leave to appeal to consider the admissibility of a videotape, which includes a sound recording, made by parents in their own home of the conduct of their child's daytime "nanny." We now affirm the denial of defendant's motion to suppress. In so doing, we recognize that a violation of the New Jersey Wiretapping and Electronic Surveillance Control Act ("the Wiretap Act" or "the Act"), *N.J.S.A.* 2A:156A–1 to –34, may require that evidence be suppressed even in the absence of a state or federal constitutional violation or the ability of a defendant to successfully obtain suppression of evidence under *R.* 3:5–7, the motion to suppress rule. *See N.J.S.A.* 2A:156A–21; *see also, e.g., State v. Robinson,* 224 *N.J.Super.* 495, 499–501, 540 *A.*2d 1313 (App.Div. 1988).

## I.

■ Defendant was indicted for second degree aggravated assault, *N.J.S.A.* 2C:12–1b(1) (count one), and second degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4a (count two), after the parents of the infant child for whom she was hired to care contracted with a private company to install an audio-video surveillance system in their own home. They did so after noticing bruises on the infant's body which defendant could not explain when asked about their origins.[1] For present purposes, we must

---

[1] Neither the federal nor the state constitutions are implicated here because the alleged unlawful conduct was performed by private individuals and not by

assume that the videotape reveals both physical and verbal abuse because the State seeks admission of portions of the recording depicting such conduct. The videotape was turned over to the prosecutor, and following her indictment, defendant moved to suppress both the video and audio portions of the videotape. She argued that the recording constituted a violation of the Act. The Law Division denied the motion after it determined that, although the Act applied to a videotape recording with a sound component, because of "the *simultaneous* use of a camera and a microphone," the recording in this case was admissible under the "consent" exception to the statute, *N.J.S.A.* 2A:156A–4d.

Defendant argues that strict statutory construction required of the Wiretap Act prevents the recognition of the "vicarious consent" theory adopted by the trial judge. Although agreeing with the trial judge's conclusion, the State contends that a videotape surveillance does not fall within the purview of the Act. However, it advocates application of the "vicarious consent" theory if we conclude that it does.

We agree with the State that the video portion of the recording does not come within the scope of the Wiretap Act. We disagree with its position as to the Act's application with regard to the audio portion of the videotape, but conclude that it is admissible because of the Act's "consent" provision.

## II.

There is little material dispute as to the governing facts of this case for purposes of the motion to suppress.

In January 1996, J.S. and D.S., the parents of five-month old T.S., hired defendant as a daytime nanny to care for their infant daughter. Defendant began working in their Randolph home in February 1996. The parents "soon became concerned about how

the government or its agents. *See, e.g., United States v. Jacobsen,* 466 *U.S.* 109, 113, 104 *S.Ct.* 1652, 1656, 80 *L.Ed.*2d 85, 94 (1984).

defendant was treating their daughter. They noticed bruises on [the infant] that defendant could not explain." Because of their concern, the parents hired "Babywatch," a private company, to have video surveillance equipment installed in their home. On May 2, 1996, the camera, with sound recording capabilities, was installed in their family room, disguised as part of an air filtration system.

A videotape recording was made on May 2 and May 3, 1996. In the words of the trial judge, "[w]hen the parents viewed a videotape of May 3rd, they saw Ms. Diaz slap [the infant] in the head, stuff a blanket into the baby's mouth as she screamed out, and twist her leg." According to the State:

> The surveillance camera confirmed [the parents'] fears on May 2, 1996, the first day it was in operation. [The infant] had trouble napping. At about 4 p.m., defendant told the baby to "[g]ive it up." She hit the baby three times on the head with the heel of her left palm. She stuffed a blanket into [the infant's] mouth and left it there for about 40 seconds. She yelled at [the infant]:
>
> > Stop f[——]ing pissing and moaning. Stop it. I'll give you something to f[——]ing scream about, bitch.
>
> She grabbed [the infant], twisted her right knee and said, "Why don't you stay sleeping?"

The videotape also captured defendant's portion of her telephone conversations on a cordless phone, parts of which could be heard while the surveillance was otherwise focused on the family room.

## III.

Defendant contends that the videotape must be suppressed because the recording was made in violation of the New Jersey Wiretapping and Electronic Surveillance Control Act.

*N.J.S.A.* 2A:156A–3 provides, in relevant part, that:

> Except as otherwise specifically provided in this act, any person who:
>
> a. Purposely intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication; or
>
> b. Purposely discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

c. Purposely uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication;

shall be guilty of a crime of the third degree....

### *N.J.S.A.* 2A:156A–2 provides relevant definitions:

As used in this act:

a. "Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception ... "Wire communication" includes any electronic storage of such communication, and the radio portion of a cordless telephone communication ...;

b. "Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but does not include any electronic communication;

c. "Intercept" means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device;

d. "Electronic, mechanic or other device" means any device or apparatus, including an induction coil, that can be used to intercept a wire, electronic or oral communication other than ...

. . . .

m. "Electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photo-optical system that affects interstate, intrastate ... commerce, but does not include....

. . . .

t. "Aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception....

New Jersey's Wiretap Act, enacted in 1969, *L.* 1968, *c.* 409, and subsequently amended, was "modeled" after Title III of the Federal Omnibus Crime Control Act and Safe Streets Act ("Title III"), 18 *U.S.C.* § 2510 to § 2520 which was enacted in 1968, *P.L.* 90–351, *Title III,* § 802, 82 *Stat.* 212. *See In re Wire Communication,* 76 *N.J.* 255, 262, 386 *A.*2d 1295 (1978); *State v. Fornino,* 223 *N.J.Super.* 531, 543–44, 539 *A.*2d 301 (App.Div.), *certif. denied,* 111 *N.J.* 570, 546 *A.*2d 499, *cert. denied,* 488 *U.S.* 859, 109 *S.Ct.*

152, 102 *L.Ed.*2d 123 (1988). The federal Act has also been revised and is now referred to in the cases as "Title I" and "Title III." [2]

The New Jersey Act is more restrictive than the federal act in some respects. *See State v. Catania,* 85 *N.J.* 418, 436–39, 427 *A.*2d 537 (1981) (New Jersey's "minimization provision" was intended by the Legislature to lay down stricter minimization guidelines than did Congress with respect to the federal act). However, when sections of the federal and state acts are substantially similar in language, it is appropriate to conclude that our Legislature's "intent in enacting the sections of the Wiretapping and Electronic Surveillance Act ... was simply to follow the federal act." *Fornino, supra,* 223 *N.J.Super.* at 544, 539 *A.*2d 301; *see also State v. Sanchez,* 149 *N.J.Super.* 381, 396–97, 373 *A.*2d 1028 (Law Div.1977).

The provisions of *N.J.S.A.* 2A:156A–2 and –3 with which we deal are substantially similar to their federal counterparts, 18 *U.S.C.* §§ 2510 and 2511 respectively. In fact, defendant points to no significant difference in the wording of the statutes. We therefore look to interpretation of the federal wiretap act for guidance in determining whether a video surveillance is covered under our law. And on that question the federal cases appear unanimous that videotaping is not subject to the Act.[3]

In upholding warrants authorizing "television surveillance" on private premises, the Seventh Circuit has said:

---

[2] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No.90–351, 82 Stat. 212, was amended and retitled by Title I of the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1851.

[3] The trial judge in this case correctly noted that *United States v. Haimowitz,* 725 *F.*2d 1561, 1581 (11th Cir.), *cert. denied,* 469 *U.S.* 1072, 105 *S.Ct.* 563, 83 *L.Ed.*2d 504 (1984) "assumed that visual and aural recordings made of meetings and telephone conversations were electronic surveillance within the meaning of the statute and thus decided the admissibility upon a consent exception" in affirming convictions. The trial judge thus believed that when a videotape included an audio component, the Act applied.

[T]he soundtrack of a videotape, no less than a free-standing tape recording, is within the scope of Title III....

But we are unwilling to go further and hold that warrants for television surveillance are subject to Title III, as warrants for bugging and wiretapping are.... Of course it is anomalous to have detailed statutory regulation of bugging and wiretapping but not of television surveillance, in Title III, and detailed statutory regulation of television surveillance of foreign agents but not of domestic criminal suspects, in the Foreign Intelligence Surveillance Act; and we would think it a very good thing if Congress responded to the issues discussed in this opinion by amending Title III to bring television surveillance within its scope. But judges are not authorized to amend statutes even to bring them up to date.... When Congress has indicated the domain of a statute as clearly as it did when it enacted Title III, we cannot apply the statute outside its domain merely because we are confident that if Congress had known then what we know now it would have used more general language. Congress said in language that could not be clearer that Title III is about the interception of wire and oral *communications* and that interception means *aural* acquisition. There is no way in which these words can be read to include silent television surveillance; and the legislative history ... indicates that the exclusion from the scope of the statute of other methods of surveillance besides those defined in the statute was deliberate.

[*United States v. Torres,* 751 *F.*2d 875, 885–86 (7th Cir.1984) (citations omitted) ].4

More recently the Eighth Circuit upheld the video surveillance of an apartment pursuant to a warrant and concluded that:

Nothing in Title I indicates an intent to ban all types of surveillance not specifically regulated therein.... Further, again we find that every circuit to have addressed this issue has concluded that Title I and [the Foreign Intelligence Surveillance Act] neither regulate nor prohibit domestic silent video surveillance ... [citing *United States v. Koyomejian,* 970 *F.*2d 536, 538–41 (9th Cir.) (*en banc*), *cert. denied,* 506 *U.S.* 1005 113 *S.Ct.* 617, 121 *L.Ed.*2d 550 (1992); *United States v. Mesa–Rincon,* 911 *F.*2d 1433, 1437–38 (10th Cir.1990); *United States v. Biasucci,* 786 *F.*2d 504, 508 (2d Cir.), *cert. denied,* 479 *U.S.* 827, 107 *S.Ct.* 104, 93 *L.Ed.*2d 54 (1986); *United States v. Torres,* 751 *F.*2d at 880–82.]

[*United States v. Falls,* 34 *F.*3d 674, 679 (8th Cir.1994).]

*See also United States v. Williams,* 124 *F.*3d 411, 417–18 (3d Cir.1997), *cert. denied,* —— *U.S.* ——, 118 *S.Ct.* 698, 139 *L.Ed.*2d 642 (1998); *United States v. Andonian,* 735 *F.Supp.* 1469, 1472

---

4 The videotaped evidence in *Torres* "had no sound track; but at the same time that the FBI was televising the interior of the ... houses it was also recording the sounds on different equipment." *Id.* at 876. The government obtained a warrant authorizing "surreptitious entries into the apartment to install electronic 'bugs' and television cameras in every room." *Id.* at 877.

(C.D.Cal.1990) (noting legislative history to 1986 amendment to federal act which suggests that statute would apply to audio, but not video, portion of a surveillance), *aff'd and remanded,* 29 *F.*3d 634 (9th Cir.1994), *cert. denied, sub. nom. Andonian v. United States,* 513 *U.S.* 1128, 115 *S.Ct.* 938, 130 *L.Ed.*2d 883 (1995).[5]

Given the similar language of our statute and the legislative intent in using such language in our Wiretap Act, *see State v. Fornino, supra,* 223 *N.J.Super.* at 543–44, 539 *A.*2d 301, we follow the federal lead and conclude that our Act was not intended to apply to a recorded silent video surveillance or the video portion of a videotape which includes a sound component.

## IV.

We need not explore whether the video portion of a tape containing an illegal oral surveillance is severable, and therefore admissible, because we agree with the trial judge that the audio portion of the defendant's statements to the infant is also admissible in this case. For the same reason, we do not have to explore whether *N.J.S.A.* 2A:156A–2b requires a "reasonable" expectation of privacy to be an "oral communication" within the meaning of the Act or, if it does, the impact of constitutional case law on that subject with respect to interpretation of our state statutory provision. *See, e.g., State v. Tirelli,* 208 *N.J.Super.* 628, 637–38, 506 *A.*2d 797 (App.Div.1986); *PBA Local No. 38 v. Woodbridge Police Dep't,* 832 *F.Supp.* 808, 819 (D.N.J.1993).[6] Moreover, as the State

---

[5] We cite these cases referring to the federal Wiretap Act only for purposes of deciding whether video recordings fall within our similarly worded statute. We do not intend to address if and when warrants may be issued by judges to law enforcement officers authorizing a video surveillance of private premises or the remedies, including suppression, for an unauthorized entry to set up a videotape surveillance. Nor do we suggest that video surveillance is *per se* lawful merely because the Wiretap Act does not apply to the video portion of the recording. As we have noted, no constitutional issue is involved in this case and we consider only the issues raised under the New Jersey Wiretap Act.

[6] We note that the "reasonable" expectations for a baby sitter or housekeeper would depend upon the totality of circumstances including the nature and hours

has expressly indicated that it will not offer into evidence the audio portion of defendant's telephone conversations included on the recording, we see no reason to consider its admissibility under the Act. Even assuming its inadmissibility, we find no basis to prevent the admission of otherwise lawful recordings contemporaneously made as part of the same videotape by private parties in their own home. *Cf. State v. Worthy,* 141 *N.J.* 368, 380–86, 661 *A.*2d 1244 (1995) (strictly applying the exclusionary remedy of the Wiretap Act and holding that where prosecutor's investigator failed to obtain prosecutor's approval for wiretap before directing interception, the suppression of subsequent authorized recording was required). *See also State v. Dye,* 60 *N.J.* 518, 535–42, 291 *A.*2d 825 (1972), *modified, State v. Catania,* 85 *N.J.* 418, 427 *A.*2d 537 (1981) (regarding minimization).

## V.

We hold that the defendant's statements to, or directed at, the baby are admissible (for the fact that they were said as part of the *res gestae* ) under *N.J.S.A.* 2A:156A–4. That section, in relevant part, provides:

It shall not be unlawful under this act for:

d. *A person not acting under color of law* to intercept a wire, electronic or oral communication, *where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception* unless such communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act. The fact that such person is the subscriber to a particular telephone does not constitute consent effective to authorize interception of communications among parties not including such person on that telephone.[7]

---

of the employment and privacy afforded at the workplace. *See, e.g., State v. Brown,* 282 *N.J.Super.* 538, 546–47, 660 *A.*2d 1221 (App.Div.), *certif. denied,* 143 *N.J.* 322, 670 *A.*2d 1064 (1995).

[7] The last sentence of *N.J.S.A.* 2A:156A–4d is not embodied in the federal act. However, this case does not involve the endeavor to introduce telephone conversations and, thus, we need not examine the significance of the sentence. As we have noted, however, the videotape in question here includes the external

[ (emphasis added).]

Because 18 *U.S.C.* § 2511(2)(d) is virtually identical to the relevant portion of *N.J.S.A.* 2A:156A–4, we adopt the federal interpretation of the similar federal provision.[8]

In *Thompson v. Dulaney,* 838 *F.Supp.* 1535 (D.Utah 1993), a divorced husband sued his ex-wife, her parents and her attorneys and experts for violations of the federal wiretap law when his telephone conversations with his three and five-year old children were recorded for purposes of custody proceedings. The ex-wife raised the defense of vicarious consent, and the court was concerned with the recording of conversations involving children who "clearly lacked legal capacity to consent." *Id.* at 1543. Nevertheless, the court held that vicarious consent provided an exception to "Title III liability," *ibid.*, and that under 18 *U.S.C.* § 2511(2)(d) a parent or guardian could authorize the recordation of his or her minor child's conversations. *Id.* at 1544. The court stated:

> [A]s long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of the phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate to act in the best interests of the children.
>
> [*Id.* at 1544.]

The court "emphasize[d]," however, that while it was not announcing "sweeping precedent regarding vicarious consent," the fact

---

recording of defendant's portion of telephone conversations which the prosecutor will not endeavor to introduce in the State's case because of its lack of relevance.

8 Defendant contends that *State v. Lane,* 279 *N.J.Super.* 209, 217–20, 652 *A.2d* 724 (App.Div.), *certif. denied,* 141 *N.J.* 94, 660 *A.2d* 1193 (1995), and *Scott v. Scott,* 277 *N.J.Super.* 601, 609–10, 649 *A.2d* 1372 (Ch.Div.1994), stand for the proposition that New Jersey courts have refused to apply the "consent exception" where the taped conversations involved a family member who had no knowledge of the intercept. We agree with the State that these cases are distinguishable because they consider unlawful (and inadmissible) the nonconsensual recording of conversations intercepted by non-parties between their spouses and third persons. Here, both parents consented to the recording of conduct in their home and could do so on behalf of one of the parties to the communication.

that the case involved "two minor children whose relationship with their mother/guardian was allegedly being undermined by their father" led to the conclusion that "vicarious consent is permissible" under Title III. *Id.* at 1544 n. 8.

Recently, in *Pollock v. Pollock,* 975 *F.Supp.* 974 (W.D.Ky.1997), a federal district court granted summary judgment to plaintiff's former wife who was sued for violating Title III as a result of her recording conversations with the parties' daughter. The court reasoned that defendant's undisputed "affidavit clearly supports her claim that she acted to protect the welfare of her children in taping the conversations...." *Id.* at 979. In so holding, the court was

> mindful of the increasingly-difficult business of child-rearing in modern America, and believe[s] that societal realities weigh into the calculus of "reasonableness" and "good faith." While we do not wish to be cited for the proposition that children do not share privacy rights such as those granted by Title III, we are confident that our holding today gives parents a wide berth to act for the good of their children and empowers them accordingly.
>
> [*Id.* at 978.]

*See also Silas v. Silas,* 680 *So.*2d 368, 371 (Ala.Civ.App.1996) (holding that a parent may give vicarious consent on behalf of a minor child to the taping of telephone conversations where that parent has "a good faith basis that is objectively reasonable for believing that the minor child is being abused, threatened, or intimidated by the [other parent]"); *cf. West Virginia Dep't of Health and Human Resources v. David L.,* 192 *W.Va.* 663, 453 *S.E.*2d 646, 654 (1994), where the court held that a father had "no right on behalf of his ... children to give consent under [West Virginia's Wiretap Act statute] to have the children's conversations with the other parent recorded while the children are in the other parent's house." There the mother had been "awarded temporary custody ... during the divorce proceedings," and the paternal grandmother had no authority to place and retrieve the voice-activated recorder in the children's bedroom while babysitting at the mother's home. Therefore, the tapes were inadmissible.

In this case, parents of a nine-month old daughter hired defendant to work in their home as a daytime nanny to care for the child. The parents became concerned about how defendant was treating their daughter and physical evidence of bruises supported their concern. We hold that *N.J.S.A.* 2A:156A–4d incorporates the theory of vicarious consent and that, under these circumstances, the audio portions of the tape recording involving statements to the child and the child's verbal reaction (as well as the video portion of the tape) are admissible.

## VI.

We affirm the order under review and remand for trial.