NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2393-17T3
A-2478-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ARTHUR R. BURNS, a/k/a
RONDALE BURNS,

    Defendant-Appellant.

APPROVED FOR PUBLICATION

January 27, 2020

APPELLATE DIVISION

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VAUGHN WILLIAMS,

    Defendant-Appellant.

        Argued January 7, 2020 – Decided January 27, 2020

        Before Judges Fisher, Accurso and Rose.

        On appeal from the Superior Court of New Jersey, Law
        Division, Burlington County, Indictment No. 16-05-
        0528.

Michael E. Riley argued the cause for appellant Arthur R. Burns (Law Offices of Riley & Riley, attorneys; Michael E. Riley, on the brief).

Alyssa A. Aiello, Assistant Deputy Public Defender, argued the cause for appellant Vaughn Williams (Joseph E. Krakora, Public Defender, attorney; Alyssa A. Aiello, of counsel and on the brief).

Regina M. Oberholzer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Regina M. Oberholzer, of counsel and on the briefs).

The opinion of the court was delivered by

ROSE, J.A.D.

These appeals, calendared back-to-back and consolidated for purposes of our opinion, present an issue of first impression, requiring us to decide whether the State's utilization of federally-contracted civilian monitors, who were sworn as "Special County Investigators," violated the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act or Act), N.J.S.A. 2A:156A-1 to -37. Because we conclude the monitors were cloaked with the investigative responsibility of law enforcement officers when they intercepted the communications at issue, we affirm.

I.

The genesis of these appeals is a nearly eighteen-month drug-trafficking investigation conducted jointly by the Burlington County Prosecutor's Office's (BCPO) Gang, Gun, and Narcotics Task Force and the Drug Enforcement Agency (DEA). Several individuals were targeted for their involvement in the distribution of large quantities of cocaine in Burlington County and surrounding areas.

As part of the ongoing investigation, the lead BCPO Task Force detective received judicial authorization to intercept communications over four cellular telephone facilities subscribed to defendant Arthur R. Burns and another individual.[1] During the pendency of the wiretap investigation, police intercepted a number of conversations and text messages, including what they believed were slang and code words for cocaine and drug transactions. Some of those

---

[1] Authorization was also granted for four communications data warrants pursuant to N.J.S.A. 2A:156A-29. Those warrants are not at issue in these appeals. The other individual identified in the application is not a party to this appeal.

A-2393-17T3

conversations pertained to multiple sales of cocaine from Burns to defendant Vaughn Williams.[2]

In support of the wiretap application, the affiant submitted a sixty-six-page affidavit to the designated wiretap judge.[3] The primary issue on appeal pertains to paragraph ten and its accompanying footnote:

> The type of communications to be intercepted are wire and electronic communications. The interceptions will be made by means of electronic equipment installed and maintained by members of the DEA and/or members of the New Jersey State Police Electronic Surveillance Unit, each of whom has undergone at least three (3) weeks of specialized training in the use of such electronic equipment and the techniques required for its proper installation. The monitoring of communications intercepted by the aforesaid electronic equipment will be done by members of or attached to the [BCPO] and [DEA] . . . .[1] All of the above law enforcement officers have been instructed in the procedures required by the ". . . Act" for the control of such an installation and the preservation of information obtained thereby. . . .
>
> _____
> [1] These individuals include Special Agents of the [DEA] as well as civilian monitors contracted by that agency, all of who[m] have been sworn as Special County Investigators/Detectives with the [BCPO].

---

[2] Burns and Williams are two of six defendants who were indicted after the investigation was completed; none of their co-defendants is a party to this appeal.

[3] See N.J.S.A. 2A:156A-2(i).

A-2393-17T3

[(Emphasis added).]

As referenced in footnote one of the affidavit, the Burlington County Prosecutor deputized DEA agents – and civilian personnel contracted by the DEA – as special county investigators. Each oath of appointment was memorialized in a document signed by the monitor and witnessed by the Prosecutor. The monitors acknowledged their appointments were limited to "the period encompassing the investigation and prosecution of a case being prosecuted by the [BCPO] and [DEA] Operation[,]" and they "serve[d] under the authority and supervision of the Prosecutor of Burlington County, or his designee." An addendum attached to each oath provides, in pertinent part:

> I understand that as directed by members of the [BCPO], a person sworn as a Special County Investigator will assist the [BCPO] or the [DEA] in conducting investigations of violations of State Law. Unless otherwise authorized by law, a Special County Investigator is not authorized to carry firearms or exercise the powers and rights of a police officer. Furthermore, a Special County Investigator must advise the Supervising Assistant Prosecutor in charge of the [BCPO Task Force], of any outside employment in which he/she is engaged and whether such outside employment has been authorized by his/her employer.

It is undisputed that the BCPO provided to the monitors oral and written minimization instructions, which each monitor signed. Among other things, the instructions included the identity of the target facilities, the potential subjects,

5                                                           A-2393-17T3

and the specified offenses under investigation. Instructions were also provided regarding the procedure for minimizing non-pertinent and privileged communications, as set forth in State v. Catania, 85 N.J. 418, 427-29 (1981), a copy of which was provided to each monitor.[4] In addition to the presence of a supervisor at the wire room, the affiant and supervising assistant prosecutor were made available to the monitors for consultation if any issues arose that were not included in the minimization lecture or written instructions.

Burns, joined by Williams and another co-defendant, moved to suppress the contents of the intercepted communications and the evidence seized as a result of those communications.[5] They challenged the warrant application on

---

[4] At oral argument before the motion judge, the prosecutor estimated each monitor was provided with "well over a hundred pages of material" to read: "And once they are . . . comfortable with . . . the contents of that document," the monitors acknowledge they have read the materials, "and then they're permitted into . . . the wire room."

[5] See N.J.S.A. 2A:156A-21, providing, in pertinent part:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . of this State may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that:
>
> a. The communication was unlawfully intercepted;

A-2393-17T3

several overlapping grounds. In essence, defendants claimed the use of civilian monitors invalidated the warrant application and the Prosecutor's appointment of special county investigators to monitor the intercepted communications exceeded his powers. They also challenged the affiant's qualifications in electronic surveillance.[6] No testimony was presented. After oral argument, the motion judge reserved decision and later issued a cogent written opinion and accompanying order denying the motion.

Pertinent to these appeals, the judge recognized, unlike Title III of the federal Omnibus Crime and Safe Streets Act (Title III), 18 U.S.C. §§ 2510-2523, the Wiretap Act does not expressly permit delegation of wire interception to civilian personnel. But, the judge was persuaded by the absence of any New Jersey precedent prohibiting the utilization of civilian monitors because, in this

---

b. The order of authorization is insufficient on its face;

c. The interception was not made in conformity with the order of authorization or in accordance with the [minimization] requirements of [N.J.S.A.] 2A:156A-12.

[6] Defendants also argued the State's failure to exhaust traditional investigatory techniques violated the necessity requirement for issuance of the warrants. That claim is not renewed on appeal.

case, "[o]nce the oath of office was administered the civilian monitors were law enforcement officers as required by and defined in the . . . Wiretap Act . . . [N.J.S.A.] 2A:156A-2(f)." The judge concluded the Prosecutor was empowered to deputize the civilian monitors as special county investigators under "the authority and power to appoint personnel necessary to carry out the functions of the office."

Burns and Williams thereafter pled guilty to drug distribution pursuant to separate conditional plea agreements with the State.[7] These appeals followed.[8]

---

[7] Burns pled guilty to two counts of first-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1); and second-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2). He was sentenced to an aggregate fourteen-year prison term, with a five-year period of parole ineligibility. The State dismissed the remaining eleven charges against Burns. Williams pled guilty to first-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1). He was sentenced to an eleven-year term of imprisonment, with a four-year period of parole ineligibility. The State dismissed the remaining count of the indictment against Williams.

[8] The parties did not request oral argument. After examining the briefs and appellate record, we determined oral argument would assist our determination of this appeal, and notified the parties to be prepared to discuss, among other things: "the Prosecutor's ability, or lack thereof, to provide a civilian with limited law enforcement powers by appointing the civilian as a 'special investigator'"; and "whether that appointment process is an ongoing practice, and if so whether the practice is state-wide and how long the practice has been occurring[.]"

A-2393-17T3

On appeal, defendants renew their argument that the State's utilization of civilian monitors violated the heightened privacy protections of the Act's minimization provision. They contend, unlike its federal counterpart, the Act does not expressly authorize civilian contractors to monitor intercepted communications, and the Prosecutor lacked authorization to appoint civilian monitors as special county investigators. Burns contends that impropriety was compounded by the affiant's failure to disclose the identity of the monitors, their qualifications, and training; and the affiant was not qualified to apply for the warrants because he lacked formal wiretap training.

The State counters defendants have neither identified any conversations whatsoever that were improperly minimized or unreasonably intercepted, nor argued there was insufficient probable cause to support the issuance of the wiretap warrants. The State maintains the Prosecutor has inherent power to appoint special county investigators as part of his responsibility to carry out the

---

During oral argument before us, the State disclosed the appointment process has been ongoing "for years" in the Office of the Attorney General and one-third of the State's counties. The utilization of "special investigators" apparently is limited to joint investigations with federal agencies and interpretation of foreign-language communications. We were also advised there is no Attorney General directive or any written policy governing the practice. The present case marked the first wiretap investigation in which special county investigators were utilized by the BCPO.

duties of his office and the enforcement of criminal matters, and the appointment here brought the civilian monitors "under the umbrella of the agency."

II.

Ordinarily, our review of a trial court's decision on a motion to suppress is limited, State v. Robinson, 200 N.J. 1, 15 (2009), because we defer to the judge's factual findings, State v. Gonzales, 227 N.J. 77, 101 (2016). Where, as here, the facts underlying a suppression motion are uncontested, our review is de novo. State v. Boone, 232 N.J. 417, 426 (2017). That standard comports with our review of statutory interpretation: unless we are persuaded by the motion judge's analysis, we need not defer to the judge's decision. See State v. Scriven, 226 N.J. 20, 33 (2016). Essentially, we owe no deference to the judge's legal conclusions or interpretation of the legal consequences that flow from established facts. State v. Goodwin, 224 N.J. 102, 110 (2016).

Our Supreme Court has chronicled the history and requirements of the Wiretap Act and Title III, after which the Act was modeled. See, e.g., State v. Feliciano, 224 N.J. 351, 367-68 (2016); State v. Ates, 217 N.J. 253, 266 (2014); Catania, 85 N.J. at 427-29. We need not reiterate those details for purposes of our decision; we recognize the Act is "more restrictive than the federal act in some respects." State v. Diaz, 308 N.J. Super. 504, 510 (App. Div. 1998)

(citation omitted); see also Feliciano, 224 N.J. at 370; Catania, 85 N.J. at 436-38. And, "[t]he Wiretap Act must be strictly construed to safeguard an individual's right to privacy." Ates, 217 N.J. at 268.

Relevant here, in Catania, our Supreme Court compared the Wiretap Act's minimization provision with that of Title III and determined "the Legislature intended to lay down stricter minimization guidelines than did Congress." Catania, 85 N.J. at 437. The Court elaborated:

> While the federal act only directs monitors to "minimize" their interception of non-relevant communications, . . . our Act directs them to "minimize or eliminate" the interception of such communications (emphasis added). The addition of the language "or eliminate" is evidence of a legislative intent to make New Jersey's minimization provision even more stringent than its federal counterpart.
>
> [Ibid.]

Importantly, those guidelines addressed the interception of non-pertinent conversations. The Court sought to protect the "greater threat to individual privacy than [that of] traditional searches and seizures" in light of the State's "heavy emphasis on wiretapping as a tool of law enforcement." Id. at 440.

Eighteen years after its enactment in 1968, Title III's minimization section was amended to permit monitoring of intercepted communications by civilian personnel. See 18 U.S.C. § 2518(5) (providing "[a]n interception under [Title

11

III] may be conducted in whole or in part by Government personnel, or by an individual operating under a contract with the Government, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception").  The Federal Bureau of Investigation sought the amendment "to free field agents from the relatively routine activity of monitoring interceptions so that they c[ould] engage in other law enforcement activities." S. Rep. No. 99-541, at 31 (1986).

The Act's minimization section is contained in N.J.S.A. 2A:156A-12. Although that section is similar to Title III's minimization section, absent is any provision permitting the utilization of civilian employees or contractors to monitor interceptions.  We note the Legislature thrice amended the Act's minimization section since Title III's minimization section was amended,[9] but none of those amendments added language expressly authorizing civilian personnel to monitor wiretap communications – or expressly prohibiting their utilization.  While that silence could cause us to "turn to extrinsic sources, such as legislative history," Maeker v. Ross, 219 N.J. 565, 575 (2014), to give effect to the Legislature's intent, see State v. Morrison, 227 N.J. 295, 308 (2016), that analysis is rendered unnecessary here, where the civilian monitors were

---

[9] See L. 1989, c. 85, § 4; L. 1993, c. 29, § 11; L. 1999, c. 151, §  5.

A-2393-17T3

deputized as investigators and, as such, they were no longer acting in a civilian capacity.

Instead, our focal point is the language contained in the Act pertaining to those who may intercept the communications. We start with the requirements for the wiretap application, which "shall state . . . [t]he identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to intercept a wire, electronic or oral communication is sought . . . ." N.J.S.A. 2A:156A-9(b) (emphasis added). Similarly, in considering the application, the wiretap judge must determine whether "there is or was probable cause for the belief that . . . [t]he investigative or law enforcement officers or agency to be authorized to intercept the wire, electronic or oral communication are qualified by training and experience to execute the interception sought . . . ." N.J.S.A. 2A:156A-10(e) (emphasis added). Further, the order authorizing interception "shall state . . . [t]he identity of the investigative or law enforcement officers or agency to whom the authority to intercept a wire, electronic or oral communication is given . . . ." N.J.S.A. 2A:156A-12(e) (emphasis added). Finally, the Act defines an "'[i]nvestigative or law enforcement officer' [as] any officer of the State of New Jersey . . . who is empowered by law to conduct investigations of, or to make arrests for, any

13

offense enumerated in [the Act] . . . ." N.J.S.A. 2A:156A-2(f) (emphasis added).[10]

Pursuant to the plain language of the emphasized provisions, see State v. Grate, 220 N.J. 317, 330 (2015), the Act undoubtedly requires interception by "investigative or law enforcement officers or agency." Because the civilian monitors were deputized as special county investigators, for purposes of the wiretap application at issue, they were not acting as "civilians" when the interceptions were made. Upon taking their oath, they became "investigative or law enforcement officers[,]" of the BCPO agency duly authorized "to conduct investigations" by monitoring the intercepted communications here. Accordingly, when the interceptions were made, the monitors fit squarely within the Act's definition.

---

[10] The State also cites the most recent amendment to the Act, which defines a "[m]ember of a New Jersey law enforcement agency" as "any sworn or civilian employee of a law enforcement agency operating under the authority of the laws of the State of New Jersey[.]" N.J.S.A. 2A:156A-35(a) (Section 35(a)). Arguably, that definition applies broadly to the Act, but the specific term is not referenced anywhere else in the Act. Also, the other definitions contained in Section 35(a) are only referenced in the three newly-enacted sections, which all pertain to counter-terrorism investigations. N.J.S.A. 2A:156A-35 to -37. In any event, we are not relying upon the definitions contained in Section 35(a) to support our decision.

In reaching that conclusion, we note a county prosecutor's power to appoint investigators is statutory. See N.J.S.A. 2A:157-10. Further, as the motion judge correctly observed, "the County Prosecutor has the authority and power to appoint personnel necessary to carry out the functions of the office." That authority is deeply rooted in our jurisprudence. See Cetrulo v. Byrne, 31 N.J. 320, 325-28 (1960). Writing for the unanimous Court in Cetrulo, Justice Jacobs cited Chief Justice Vanderbilt's decision in State v. Winne, 12 N.J. 152, 167 (1953), which underscores the Prosecutor's authority and bears repeating here:

> Chief Justice Vanderbilt referred to the prosecutor's dominant position and primary responsibility for the enforcement of the criminal laws in his county and he cited various legislative enactments which have from time to time given him not only express powers to appoint designated assistants but also implied powers to appoint additional personnel when needed for the proper discharge of his duties. Under N.J.S.A. 2A:158-5 (formerly R.S. 2:182-5) the prosecutor is directed to "use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws" . . . .
>
> [Cetrulo, 31 N.J. at 325.]

With those basic tenets in mind, we reject defendants' argument that the Prosecutor was not empowered to create the position of "Special County Investigator" for purposes of the wiretap investigation in the present matter.

15

Not surprisingly, defendants cite no authority for their contention. Instead, they posit that by limiting the investigators' functions, the Prosecutor contravened the broad-reaching powers of his appointment statute. Compare N.J.S.A. 2A:157-10 (emphasis added) (providing "[p]ersons so appointed [as county investigators] shall possess all the powers and rights and be subject to all the obligations of police officers, constables and special deputy sheriffs, in criminal matters") with the oath administered by the Prosecutor (emphasis added) (providing "[u]nless otherwise authorized by law, a Special County Investigator is not authorized to carry firearms or exercise the powers and rights of a police officer").

But, as stated above, the Act's definition of an "[i]nvestigative or law enforcement officer" includes "any officer . . . who is empowered by law to conduct investigations . . . or to make arrests . . . ." N.J.S.A. 2A:156A-2(f) (emphasis added). The Legislature specifically used the disjunctive "or" to define an officer's powers; thus, the Act does not require that an officer possess both investigative and arrest powers. Accordingly, under the Act, an officer need not possess "all the powers and rights . . . of police officers" as set forth in N.J.S.A. 2A:157-10, which pertains to the "appointment, salary, [and] duties" of "[c]ounty investigators generally." We therefore discern no impropriety in the

restriction imposed by the Prosecutor, limiting the power of the special county investigators to this wiretap investigation. Rather, that limitation comports squarely with the statutory definition of investigative officers under the Act, the Prosecutor's obligation to comply with the Act's monitoring mandates, and his power to appoint "additional assisting personnel," Cetrulo, at 31 N.J. at 328, to discharge his duties and enforce the law.

In view of our decision, we need not address whether civilian personnel, who are not deputized as special county investigators or other law enforcement officers as defined within the Act, are permitted to monitor intercepted communications. That omission from the minimization section of the Wiretap Act "is best left for consideration by the Legislative and Executive branches of government." In re Declaratory Judgment Actions, 446 N.J. Super. 259, 286 (App. Div. 2016); see also State v. Saavedra, 433 N.J. Super. 501, 525 (App. Div. 2013).

Revisiting the terms of the Act we emphasized above, we also reject Burns' argument that the wiretap affidavit improperly omitted the identities and qualifications of the monitors. Again, the plain language of the Act requires the affidavit to state the identity and qualifications of the officers or agency seeking authority for interception, N.J.S.A. 2A:156A-9(b); the order only requires their

identity, N.J.S.A. 2A:156A-12(e). The Act does not expressly require that the wiretap application set forth the identity and qualifications of every monitor who intercepts communications in a wiretap investigation.[11]

Pursuant to those requirements, the affidavit identifies the BCPO as the agency seeking the warrants and the qualifications of the affiant. The affidavit also discloses the monitoring would be performed by members of the BCPO, DEA and civilian monitors, all of whom were sworn as special county investigators and "instructed in the procedures required by the [Act] for the control of such an installation and the preservation of information obtained thereby." The order, in turn, identifies those same agencies and individuals, noting the monitors were deputized as special county investigators of the BCPO, all of whom were "qualified by training and experience to execute such interceptions."

We discern no impropriety in the procedures employed here, especially because defendants have not identified any intercepted communications that were improperly minimized. See Catania, 88 N.J. at 435 (finding it "[s]ignificant[]" that "the defendants ha[d] not pointed to a single non-relevant conversation that was unreasonably intercepted"). Notably, defendants also

_____

[11] The record reflects nearly fifty monitors were utilized in this investigation.

A-2393-17T3

have not challenged the issuing judge's probable cause determination. We are therefore satisfied defendants have not demonstrated utilization of civilian monitors – whom the Prosecutor had deputized as special county investigators in this investigation – intruded on defendants' privacy interests. Id. at 429. Instead, tasking those contractors with routine monitoring was a common-sense approach, enabling police to conduct field investigations as the wiretap investigation unfolded.

In reaching our decision, we further reject Burns' argument that the affiant was not qualified to apply for the wiretap orders. The affiant's qualifications are fully set forth in paragraph fifteen of the affidavit, which spans three pages. Among other things, the affiant detailed his familiarity with the procedural requirements of the Act and his knowledge of wiretap investigations, including "the manner in which individuals communicate on the telephone for the purpose of engaging in illegal narcotics activity." Importantly, the affiant disclosed he had prepared a prior wiretap affidavit and wiretap extensions. We therefore discern no reason to disturb the wiretap judge's determination. See State v. Dye, 60 N.J. 518, 527 (1972) (deferring to the Law Division's determination as to whether the detective charged with installing and maintaining the wiretap warrant, as described in the warrant affidavit, was qualified to do so).

19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2393-17T3